EDWARDS, JUDGE PRO TEMPORE, J.
This is an appeal from a judgment of the district court sustaining defendants' peremptory exceptions of no right of action, res judicata , and prescription, and defendants' declinatory exception of lack of subject matter jurisdiction, and dismissing all of plaintiff's claims against defendants, with prejudice. The suit originated out of a claim by plaintiff, The Law Office of John D. Sileo, LLC ("Sileo"), against its former clients, defendants, Deborah and Mark Kruse (the "Kruses"), to recover attorney fees and expenses pursuant to a contingency fee contract, and a claim for conversion against defendant, The Law Offices of Allan Berger & Associates, PLC ("Berger"), for its alleged wrongful appropriation of those attorney fees and expenses. For the following reasons assigned, we affirm the district court's grant of defendants' exception of no right of action and, consequently, pretermit review of the remaining exceptions on the grounds that they are moot.
FACTS AND PROCEDURAL HISTORY
On June 6, 2012, Sileo filed a complaint on behalf of the Kruses in the United States District Court, Eastern District of Louisiana, for damages related to Deborah's use of transvaginal mesh/American Medical Systems/Endo Corporation Sparc. The Kruses' suit was thereafter transferred *1059 on June 25, 2012 from federal district court in Louisiana into multi-district litigation pending in the United States District Court, Southern District of West Virginia (hereinafter "Mesh MDL").[1]
On September 23, 2012, three months after filing the initial complaint on behalf of the Kruses in federal district court, Sileo entered into a contingency fee contract with Deborah Kruse regarding its representation of the Kruses' pending suit in the Mesh MDL litigation.[2] The contract called for Sileo to receive forty percent of the total amount collected in the event settlement was achieved without the necessity of filing suit (even though suit had already been filed at the time the contingency fee contract was confected), or fifty percent of "whatever amount [was] collected" in the event an appeal. The contract also provided the following:
RIGHT TO DISCHARGE ATTORNEY: I understand that I have the right to discharge my attorney. If I do so, my Attorney is nevertheless entitled to the fees, expenses, loans and interest thereon, upon any settlement or judgment obtained on my claim, as set forth in this contract in accordance with law.
According to Sileo, during the two-and-a-half years after suit on behalf of the Kruses was filed, a substantial amount of legal work was performed and expenses pertaining to the Mesh MDL litigation were incurred by Sileo. By written correspondence dated February 9, 2015, the Kruses terminated Sileo's representation. Two weeks later, on February 24, 2015, the Kruses filed a motion to substitute defendant, Berger, as counsel of record for the Kruses in lieu of Sileo in the Mesh MDL litigation.
During the five months following his discharge, the record reflects that Sileo took no formal or informal action to protect its interest to attorney fees and costs incurred by the firm during its representation of the Kruses. Sileo did not file its contingency fee contract pursuant to La. R.S. 37:218,[3] nor did it file a petition of *1060 intervention in to the federal court action. Moreover, the record is devoid of evidence that Sileo ever attempted to notify Berger in writing or otherwise to advise of its contingency fee contract and/or its intent to pursue its rights thereunder.
Because it had not yet withdrawn as counsel of record for the Kruses (though four-and-a-half months had lapsed since its discharge), Sileo received notice from the federal district court on June 30, 2015 via the federal court's electronic notification system advising that a settlement of the Kruses' claims in the Mesh MDL litigation had been reached, and that the court had issued an "inactive docket order" retiring the Kruses' case from the court's active docket.[4] The order provided that the court would "reinstate the case to the active docket" upon a showing of good cause for such reinstatement.[5]
On July 7, 2015, five months after having been discharged by the Kruses, Sileo filed a motion to withdraw as their counsel of record in the Mesh MDL litigation. Notably, on that same day, though it had received notice that the Kruses' suit had previously been settled and moved to the federal court's inactive docket, Sileo attempted to file a petition of intervention in the inactive suit seeking to enforce the contingency fee contract it entered into with Deborah Kruse and to recover attorney fees and the out-of-pocket expenses Sileo incurred during its representation of the Kruses prior to its discharge.[6] Attached as an exhibit to Sileo's petition was a copy of the contingency fee contract. Though it did not include a motion for leave to file its petition of intervention, Sileo submitted a proposed order with its petition that would grant Sileo leave of court to file the petition into the record.
There is no indication in the record of the instant appeal, however, evidencing that the proposed order submitted by Sileo was ever signed or that the federal district court otherwise issued an order permitting Sileo's petition of intervention. In federal court, an intervention may only be filed with leave of court pursuant to a "timely motion." See Fed. R. Civ. Proc. 24. Accordingly, because Sileo did not obtain the required permission or authority to intervene, Sileo's petition of intervention was never actually filed. In short, the effect of Sileo's unsuccessful attempt to file its petition of intervention to recover attorney fees and costs was that the intervention was never actually "filed" and the claims asserted therein were never actually made or "pending."
On July 10, 2015, three days after its unsuccessful attempt to file the untimely petition of intervention, Sileo filed a motion to reinstate the Kruses' case to the active docket "so that the issues presented in [Sileo's] petition of intervention" could be litigated and resolved. On August 6, 2015, the federal district court entered an order denying Sileo's motion to reactivate the case. Implicit in the trial court's denial *1061 was its determination that Sileo's motion failed to establish the requisite showing of "good cause."
Notably, following the federal court's denial of Sileo's motion, Sileo took no remedial action. It did not file a motion for reconsideration or rehearing. It did not file a motion for new trial, a writ application or appeal, or any other request for review in the federal court action. Moreover, Sileo also failed to take any further action relative to the court's failure to sign the order granting leave to file its petition of intervention.
On September 9, 2015, seven months after it had been discharged, and aware that the Kruses' case had been settled three months prior and that its attempt to file a petition of intervention and/or reopen the case was unsuccessful, Sileo filed and recorded its 2012 contingency fee contract entered into with Deborah Kruse in Jefferson Parish.
For the next eight-and-a-half months, Sileo took no futher action.
On May 31, 2016, representing to the court that "all claims ha[d] been compromised and settled, including all claims, counterclaims, cross-claims and third party claims," the Kruses and the party made defendant in their suit in the Mesh MDL litigation filed a joint motion to dismiss the Kruses' suit with prejudice. A final order dismissing all claims "WITH PREJUDICE and STRICKEN from the docket" was issued by the federal district court that day. There is no indication that Sileo took any action to challenge the final order of dismissal, which order he alleges in the instant litigation resulted in its "loss of a property right, contractual right, and/or a privilege for fees and costs asserted in the Mesh MDL."[7]
Thereafter, on October 24, 2016-twenty months after having been discharged, sixteen months after receiving notice that the Kruses' claims had been settled, fifteen months after having unsuccessfully filed a petition of intervention, fourteen months after its motion to reactivate the case for purposes of litigating the issue of its claim for attorney fees and costs was denied, thirteen months after having recorded the contingency fee contract in Jefferson Parish, and five months after the issuance of the final order of dismissal with prejudice of all claims in the Kruses' federal court-Sileo filed a petition for damages in the instant case against the Kruses and their successor attorney, Berger, seeking to enforce the contingency fee contract, and to obtain "earned attorney fees and legal costs wrongfully obtained and held by Berger." Sileo attached to its petition a copy of the contingency fee contract and a statement of all legal expenses incurred in its representation of the Kruses in the federal court action prior to being discharged. Accepting Sileo's statement of expenses as true solely for purposes of this appeal, it appears that the sole expenses Sileo incurred during its two-and-half-year representation included the initial fee for filing the Kruses' complaint in federal district court in 2012, and for costs associated with medical records it requested in June 2013. In short, Sileo's costs totaled $417.92.[8] Despite Sileo's allegation that it *1062 performed a substantial amount of legal work [in the Mesh MDL litigation], including, but not limited to, significant legal research, discovery, participation in depositions, telephone conferences with parties to the MDL, and extensive verbal and written correspondence with all counsel involved in the litigation," Sileo identified no other expenses or costs.
In response to Sileo's original petition, defendants filed a declinatory exception of lack of subject matter jurisdiction, and peremptory exceptions of res judicata , prescription and no right of action. Thereafter, Sileo filed its first supplemental and amending petition broadening its claim against the Kruses to include a breach of contract claim, and to assert a claim for misrepresentation and ill practices against Berger for misrepresenting to the Mesh MDL court that all claims had been compromised in order to obtain a dismissal with prejudice when it knew that Sileo's petition for intervention was still "pending."[9]
Defendants' exceptions came for hearing on February 6, 2017. Following the hearing, the trial court took the matter under advisement. On February 7, 2017, the trial court rendered judgment granting all four of the exceptions brought by Deborah and Mark Kruse; the judgment was silent as to the same exceptions urged against Sileo by Berger. An amended judgment was issued on February 9, 2017, which granted all of the exceptions in favor of both the Kruses and Berger. Subsequently, written reasons were requested by Sileo and thereafter provided by the trial court on February 24, 2017.
Sileo timely appealed from the trial court's February 9, 2017 judgment sustaining defendants' exceptions. Because this Court found that the judgment lacked the requisite decretal language to constitute a final, appealable judgment,[10] we remanded the matter directing the trial court to amend its judgment of February 9, 2017, accordingly. As directed, the trial court issued an amended judgment on September 20, 2017, dismissing Sileo's action with prejudice, and declaring the judgment as final and appealable.[11]
ISSUES PRESENTED FOR REVIEW
Sileo avers that the trial court erred in sustaining each of the four exceptions brought by defendants; namely, the declinatory exception of lack of subject matter jurisdiction, and the three peremptory exceptions of no right of action, prescription, and res judicata , respectively. Because we affirm the trial court's judgment dismissing Sileo's action against defendants' on the basis that, under the specific facts presented, Sileo has no right of action against defendants for attorney fees or expenses, we pretermit discussion of the remaining exceptions as they are now moot.
DISCUSSION
We find that our previous decision in *1063 Ferguson v. W. Jefferson Levee Dist. Bd. of Comm'rs , 96-385 (La. App. 5th Cir. 11/14/96), 685 So.2d 273, writ grantedin part denied in part , 96-3005 (La. 2/7/97), 688 So.2d 486, is dispostive of Sileo's claims against both the Kruses and Berger in this case.
In Ferguson v. West Jefferson Levee Dist. Bd. of Comm'rs , supra , the plaintiff, a discharged attorney, appealed a judgment granting an exception of no right of action dismissing his claim for attorney fees and expenses filed against his former client and the client's successor attorney. The plaintiff's suit alleged that he was entitled to attorney fees and reimbursement of expenses that he incurred during his legal representation of his former client in a federal tort action prior to his discharge.
Specifically, the plaintiff filed a federal court action on behalf of his former client and represented her in that litigation until his discharge two years later. On the same day the plaintiff received a written notice of his discharge from his former client, a copy of which was filed into the federal court record, the federal court judge issued an order dismissing the plaintiff as the attorney of record, but reserved to him the "right to intervene in [the] proceedings in order to protect his interest in his attorney's fees." The following week, the plaintiff's former client retained new counsel, who contacted the plaintiff in order to obtain his former client's file. Eight months later, the plaintiff's former client and her successor attorney entered into a settlement agreement with the federal court defendant, the settlement funds were disbursed, and the federal court case was closed. Three months after the federal case was closed-and over eleven months after the judge's order allowing the plaintiff to intervene-the plaintiff attempted to file a petition for intervention in the federal court action. Though the intervention was initially allowed, it was subsequently dismissed. The plaintiff did not seek writs, an appeal, or any other further review of the order dismissing his intervention. Consequently, the order became final in federal court. Thereafter, having lost in federal court, the plaintiff filed suit in state court seeking to recover attorney fees and expenses. In affirming the trial court's judgment dismissing the plaintiff's petition on an exception of no right of action, we held:
[P]laintiff could have availed himself of the provisions of La. R.S. 37:218, which would have protected him in case of settlement , but he failed to do so ." In Reis v. Fenasci & Smith , 93-1785, (La. App. 4 Cir. 4/14/94), 635 So.2d 1319, the court held that where an attorney fails to record his contract in accordance with La. R.S. 37:218, failure to record the contract results in a forfeiture of counsel's right to recover attorney fees against his client. Thus the trial judge correctly dismissed plaintiff's claim against [his former client].
Under Reis, supra , plaintiff might still have had a claim against [his former client's] successor attorney: (1) if subsequent counsel has been notified before settlement of the prior attorney's assertion of rights under an employment contract , and (2) if plaintiff were fired without cause.[12]
*1064 Either intervention in the federal suit or filing under La. R.S. 37:218 would have constituted sufficient notice under Reis , supra.
Ferguson , 96-385, p. 6, 685 So.2d at 275. [Emphasis supplied.]
The plaintiff in Ferguson applied for a writ of certiorari and/or review of our decision with the Supreme Court; his application was granted in part, and denied in part. See Ferguson , 96-3005 (La. 2/7/97), 688 So.2d 486. Specifically, the application was denied as to the plaintiff's claims against his former client and the settling defendant in the federal court action. As to the plaintiff's claims for attorney fees and expenses made against his former client's successor attorney, the Supreme Court did not reverse our dismissal of that claim, but rather, remanded the case to the trial court for "reconsideration" of that claim in light of its recent decision in O'Rourke v. Cairns , 95-3054 (La. 11/25/96), 683 So.2d 697, which provides guidance to lower courts and litigants in cases of attorneys discharged with cause in the contingency fee context.[13]
In the instant case, it is clear based on our previous decision in Ferguson , supra , that Sileo forfeited his right to pursue a claim against the Kruses when he failed to comply with La. R.S. 37:218 and timely file or record the contingency fee contract prior to the Kruses' settlement of their case in the Mesh MDL litigation. Sileo's reliance on Rush, Rush & Calogero v. Barrios , 97-1532 (La. App. 3 Cir. 4/22/98), 716 So.2d 23, to support his claim against the Kruses is misplaced.[14] In Rush , the Third Circuit specifically rejected this Court's decision in Ferguson and our interpretation and application of La. R.S. 37:218 as to the discharged attorney's claim for attorney fees and costs against his former clients. Our decision in Ferguson has not been overruled and is still the law of this Circuit and controls the outcome of Sileo's *1065 right to pursue his claim against the Kruses. Due to his own dilatory actions, he has none.
Additionally, we note that Rush is also factually distinguishable from the instant case. In Rush , the discharged attorney properly filed a petition of intervention prior to the plaintiffs having reached a settlement in the case, putting both his former client and the client's successor attorney on notice of his intention to assert his right or privilege under the contingency fee contract to an amount of the proceeds derived in any future settlement or judgment. Rush , 97-1532, p. 2, 716 So.2d at 24. Also, while the discharged attorney later filed a motion to dismiss his petition for intervention, the trial court granted the motion without prejudice preserving the discharged attorney's right to later file suit to recover attorney's fees and expenses against his former clients and their successor attorneys. Id.
In the instant case, Sileo neither properly filed a petition of intervention nor attempted to file a petition of intervention prior to the settlement of the Kruses' federal court action. The record evidences that following his discharge, he did nothing to protect his rights under the contingency fee contract until over four months had passed and he received notice through the federal court's electronic notification system regarding settlement of the Kruses' case. Thereafter, while Sileo attempted to file a petition for intervention into the Mesh MDL litigation, it failed to make sure the petition was permitted into the record by the court, as the order granting leave to file the petition was never signed. Further, when Sileo's motion to reinstate the case to the active docket so that it could pursue a petition for intervention was denied, Sileo took no further action to challenge or seek reversal of the court's adverse ruling. In short, Sileo merely failed to take the necessary steps to protect its rights under the contingency fee contract before such rights were lost to it. The holding in Rush is not only in direct contravention to the controlling law in this Circuit, it is factually distinguishable and inapplicable to the instant case.
We further hold that, under the specific facts of this case as outlined in detail above, by its own failure to timely act, Sileo has also forfeited any rights it may have had to pursue a claim for attorney fees and costs against Berger, the Kruses' successor attorney. As noted above, in Ferguson , supra , we held that even though a discharged attorney forfeits his right to pursue a claim against his former client when he fails to timely comply with La. R.S. 37:218, he may still have a claim against the successor attorney if, prior to settlement , he notifies the successor attorney of his intention to assert his rights under the contingency fee contract, and he was fired without cause. Ferguson , 96-385, p. 6, 685 So.2d at 275. We determined that the discharged attorney's filing of an intervention prior to settlement of the underlying claim constitutes sufficient notice to the successor attorney of his intent to assert his rights. Id. The Supreme Court's remand in Ferguson , directing the trial court to reconsider its ruling as to the discharged attorney's claim against the successor attorney in light of its decision in O'Rourke , does not alter our decision in this case as to Sileo's claim against Berger.
First, the Supreme Court's remand in Ferguson was not a reversal of our decision upholding the dismissal of the discharged attorney's claim against the successor attorney; it was a remand for reconsideration. Second, in O'Rourke , supra , the attorney discharged with cause had timely filed a petition of intervention in his former client's ongoing case, clearly giving the successor attorney notice of his intention to assert a *1066 claim or privilege against any future settlement or judgment. In fact, the judgment appealed in O'Rourke was the judgment rendered following the trial of the discharged attorney's intervention, and at issue on appeal was the proper method of calculating the fees to be allocated to an attorney discharged for just cause. Unlike the instant case, whether the discharged attorney had timely given the successor attorney notice of his intention to assert his rights under the contingency fee contract, and thus properly preserved his right to later do so, was not an issue that was presented or addressed by the court. Consequently, O'Rourke has no bearing on our decision in this case. Here, aside from the fact that whether Sileo was discharged by the Kruses with or without just cause has never been determined (and such a determination is not necessary to our ruling herein), we do not even reach the proper allocation of fees that may be due to Sileo under O'Rourke because we find that, by Sileo's failure to timely file a petition of intervention or otherwise notify Berger in some manner of its intent to assert its rights under the contingency fee agreement prior to the settlement of the Kruses' federal court action, it forfeited its right to do so thereafter.
Moreover, we find that Sileo's reliance on the Fourth Circuit's decision in Murray, Murray, Ellis, Braden & Landry v. Minge , supra , to support his claim against Berger is misplaced. In Minge , the Fourth Circuit reversed the trial court's grant of exceptions to the plaintiff's claim for apportionment of fees between the firm and the client's successor attorney. Minge , 516 So.2d at 216. In doing so, the court made a specific finding that the discharged attorney had, on several occasions, informed the successor attorney of his intent to assert his rights under the contingency fee contract. Moreover, and significantly, the successor attorney "acknowledged the [contingency fee] contract and the fact that [the discharged attorney] would be entitled to a portion of the attorney fees." Id. Thus, though the discharged attorney in Minge had not complied with La. R.S. 37:218 or timely filed a petition of intervention prior to settlement, the court found, and the successor attorney acknowledged, that the discharged attorney had provided sufficient notice of his intent to assert his rights under the contingency fee contract, and, thus, was allowed to pursue them in a subsequent suit against the successor attorney.[15] Conversely, in the instant case, there is nothing in the record before us to support a finding that Sileo informed Berger of its intent or took any action to assert its rights to attorney fees and expenses under the contingency fee contract prior to settlement of the Kruses' suit in the Mesh MDL litigation.
Accordingly, for the forgoing reasons, based upon the specific facts of this case, due to Sileo's own dilatory actions or inaction, we hold that the trial court properly sustained the defendants' exception of no right of action, dismissing Sileo's action against both the Kruses and Berger, with prejudice.
AFFIRMED.

In Re: American Medical Systems, Inc. v. Pelvic Repair Systems Products Liability Litigation , USDC, Southern District West Virginia (Charleston), Case No.: 2-12-cv-02274, MDL No.: 2325, is the Kruses' individual case pending in the MDL.

Defendant, Mark Kruse, did not sign the contingency fee agreement, nor does his name appear in the agreement.

La. R.S. 37:218 provides:
A. By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property. Such interest shall be a special privilege to take rank as a first privilege thereon, superior to all other privileges and security interests under Chapter 9 of the Louisiana Commercial laws. In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue, or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile. After such filing, any settlement, compromise, discontinuance, or other deposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition has been made.
B. The term "fee", as used in this Section, means the agreed upon fee, whether fixed or contingent, and any and all other amounts advanced by the attorney to or on behalf of the client, as permitted by the Rules of Professional Conduct of the Louisiana State Bar Association.

The inactive docket order "DIRECT[ed] the Clerk to file a copy of this order in MDL 2325 and in the individual cases" and "to send a copy of this Order to counsel of record and any unrepresented party."

The court's order further provided that the parties had until April 30, 2016 to submit an agreed order of dismissal with prejudice.

According to Sileo's petition of intervention, it "performed a substantial amount of legal work, including but not limited to significant legal research, discovery, participation in depositions, telephone conferences with all parties to the MDL, and extensive verbal and written correspondence with all counsel in [the] litigation."

Again, because Sileo's petition of intervention was never actually filed, or received, into the record of the Mesh MDL litigation, arguably Sileo's loss of any property right, contractual right, and/or privilege for fees and costs was a result of its own failure to timely act.

The statement of expenses evidences a September 11, 2015 courier charge of $96.00 incurred by Sileo. Because Sileo's representation of the Kruses ceased seven months prior on February 9, 2015, this expense is unrelated to his representation of the Kruses.

Contrary to Sileo's allegations herein that the petition of intervention it attempted to file was "still pending" when the parties presented the joint motion to dismiss with prejudice for signature attesting that all claims had been fully compromised, if the petition of intervention was never actually filed, it follows that at no time was the petition of intervention ever "pending."

Specifically, the February 9, 2017 judgment indicated that the exceptions were "granted," but the specific relief granted could not be determined from the judgment as rendered.

Out of an abundance of caution, Sileo filed a separate appeal of the trial court's September 20, 2017 judgment, as amended. Because a single amended judgment forms the basis of both appeals, the two appeals have been consolidated.

Based on evidence in the record, the federal court judge found that the plaintiff had been fired by his former client for "malfeasance and/or nonfeasance" because the plaintiff had failed to "oppose one motion that was subsequently granted as unopposed and he [had] filed such garbled pleadings that the Court dismissed his state law claims." Accordingly, this Court found that the trial court correctly determined that the plaintiff had been discharged by his former client in the federal court litigation for just cause.

In O'Rourke , a case involving a claim for attorney fees and cost asserted via intervention in the main demand by the attorney discharged by his former client with cause against the successor attorney, the Supreme Court held that in cases of discharge with cause of an attorney retained on contingency, the trial court should determine the amount of the fee according to the rule set forth in Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La. 1978), i.e. , that a claimant should be exposed to no more than one contingency fee. Accordingly, in allocating attorney fees in both with and without cause situations, the trial court is to calculate the highest ethical contingency to which the client contractually agreed in any of the contingency fee contracts executed. O'Rourke , 95-3054, pp. 21-22, 683 So.2d at 704. The trial court should then allocate the fee between or among discharged and successor counsel based upon the Saucier factors, i.e. , the factors set forth in Rule 1.5 of the Code of Professional Responsibility. Id. Thereafter, the trial court should consider the nature and gravity of the cause which contributed to the dismissal and reduce by a percentage amount the portion discharged counsel otherwise would receive after the Saucier allocation. Id.

At issue in Rush was whether a discharged attorney has a right of action to recover against his/her client under a non-recorded contingency fee contract, after settlement was subsequently obtained by a successor attorney. Citing La. C.C. arts. 1948, 1949 and 1968, the Third Circuit determined that the contingency fee contract was governed by the laws of obligation and, as such, could not be rendered unenforceable absent a vice of consent, an error of cause, or a public policy violation. Rejecting this Court's ruling in Ferguson , supra , and the Fourth Circuit's holding in Murray, Murray, Ellis, Braden & Landry v. Minge , 516 So.2d 213 (La. App. 4 Cir. 1987), writ denied , 516 So.2d 369 (La. 1988), the Third Circuit refused to interpret La. R.S. 37:218 to mean that a discharged attorney's failure to record the contingency fee agreement resulted in a forfeiture of the attorney's right to recover from the former client on the basis that to do so would conflict with the rules of statutory interpretation and permit unjust enrichment.

See Reis v. Fenasci & Smith, supra , decided by the Fourth Circuit subsequent to Minge , wherein the court held that, under the facts presented, the discharged attorney failed to state a cause of action in a suit against his former client's successor attorney to assert his rights under a contingency fee contract because he failed to establish that he had given the requisite "Murray notice" to the successor attorney prior to settlement of his former client's case. Reis , 93-1785, p. 7, 635 So.2d at 1322.